NOT FOR PUBLICATION                                  (Docket Entry No. 3)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____
                                   :
SABRINA GILBERT,                   :
                                   :
            Plaintiff,             :   Civil No. 05-668 (RBK)
                                   :
      v.                           :   **OPINION**
                                   :
FOX & ROACH, LP, d/b/a             :
PRUDENTIAL FOX & ROACH             :
REALTORS, et al.,                  :
                                   :
            Defendants.            :
_____:

**KUGLER**, United States District Judge:

   This matter now comes before the Court on Motion by Defendants Fox & Roach, LP, Martin S. Brown, Sr., and Gary Williams ("Defendants") to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to compel arbitration and stay prosecution of the present suit pursuant to the Federal Arbitration Act. Defendants argue that the arbitration clause in the employment contract signed by Plaintiff Sabrina Gilbert ("Plaintiff") precludes this Court as a forum for resolution of their dispute. For the reasons set forth below, Defendants' motion is denied.

**I.      Background**

   Plaintiff was a sales associate with Defendant

Prudential Fox & Roach Realtors ("Fox & Roach") Cherry Hill Barclay Office from March 18, 2004 until her dismissal on July 13, 2004. She alleges that Defendants discriminated against her on the basis of her race, denying her employment opportunities, causing her emotional distress, and ultimately terminating her employment.

Fox & Roach organizes its sales associates in teams. Upon her hire, Plaintiff, who is black, was assigned to a team led by Defendant Martin S. Brown, Sr. ("Brown"), who is also black. Plaintiff alleges that Defendants had a policy of assigning all black sales associates to Brown's team. Consequently, Brown's team members were predominately black, while the remaining teams consisted of almost exclusively white members.

The specific incident in question involves a memorandum, issued July 7, 2004, establishing policies applying to Brown's team. According to Plaintiff, all black sales associates and no white sales associates were required to sign the memorandum. Plaintiff refused the sign the memorandum and asked to transfer to another team or office. The office manager, Defendant Gary Williams, refused Plaintiff's request to transfer and insisted that she sign the memorandum and continue working on Brown's team. Approximately one week later, after Plaintiff continued to refuse to sign the memorandum, her employment with

Fox & Roach was terminated. Plaintiff filed suit in this Court on February 1, 2005, seeking injunctive relief and monetary damages.

At the time of hire, Gilbert signed a two-page Sales Associate Independent Contractors Agreement ("employment agreement"). The bottom of the first page contained a dispute resolution provision providing that:

> Disputes between Associate and another of Broker's sales associates, sales managers or employees will be submitted first, to a trained mediator and, if unsuccessful, then will be subject to binding, nonappealable arbitration before a panel consisting of three (3) members of the management team who are not involved in the dispute . . . .
>
> [D]isputes between Associate and Broker (including with respect to the interpretation, of this agreement) will be submitted to binding, nonappealable arbitration, pursuant to the commercial rules of the American Arbitration Association . . . .
>
> Either party may terminate this Agreement for any reason whatsoever, with or without cause, upon one day's prior written notice to the other. Upon termination the following shall apply:
>
>> (a) Neither Broker nor Associate shall have any rights or obligations under this agreement . . . except that the allocation of rights and responsibilities in paragraphs [including the dispute resolution provisions] shall survive the termination, as they relate to events occurring prior to the termination.

App. A to Dawn Evans Cert. 1-2.

Sections within the Fox & Roach Employee's Manual contained more detailed descriptions of procedures for handling disputes with other Fox & Roach associates, including the requirement of binding and non-appealable arbitration.

Defendants now move to dismiss or stay Plaintiff's action on the basis that the arbitration agreement is binding under the Federal Arbitration Act, requiring Plaintiff to address her claim through arbitration.

**II.		Discussion**

The Federal Arbitration Act (FAA) guarantees that any agreement to settle a dispute by arbitration in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994). The FAA permits district courts to enforce arbitration agreements in employment contracts, so long as the provision has a slight nexus to interstate commerce. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998).

In enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). Congress intended the FAA "to abrogate the then-existing common law rule disfavoring arbitration agreements 'and to place arbitration agreements upon the same footing as other contracts.'" Martindale

v. Sandvik, Inc., 800 A.2d 872, 876 (N.J. 2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). As a result, parties may waive statutory remedies and the right to trial by jury in favor of arbitration. See Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 773 A.2d 665, 670 (N.J. 2001).

To ascertain the existence and scope of an agreement to arbitrate, the Court must apply state contract principles. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir.2002). However, as the New Jersey Supreme Court has observed, "consistent with federal law, a state cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts." Leodori v. CIGNA Corp., 814 A.2d 1098, 1104 (N.J. 2003). Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (holding that the FAA provisions indicate a "liberal federal policy favoring arbitration agreements.").

In spite of the FAA's policy favoring arbitration, the New Jersey Supreme Court has set a high threshold for the language necessary to validly waive judicial remedies in an arbitration agreement. In doing so, the Court cited the state's

"clear public policy . . . to abolish discrimination in the work place," and relied upon the principle of contract interpretation that "a party's waiver of statutory rights 'must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.'" <u>Garfinkel</u>, 773 A.2d at 670 (quoting <u>Fuchilla v. Layman</u>, 537 A.2d 652 (N.J. 1988) and <u>Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.</u>, 393 A.2d 267 (N.J. 1978)). Consequently, a waiver of the right to seek judicial adjudication of statutory remedies is enforceable only if it reflects that the employee "has agreed clearly and unambiguously to arbitrate the disputed claim." <u>Leodori v. CIGNA Corp.</u>, 814 A.2d 1098, 1104 (N.J. 2003).

      Plaintiff states that she did not understand that the arbitration provision in her employment contract foreclosed her right to pursue discrimination claims in court. She contends that the provision's failure to specifically mention either statutory claims or her right to a jury trial renders it ambiguous and therefore unenforceable. Defendants argue that an arbitration provision can be sufficiently unambiguous without explicitly stating that the party is waiving her right to a judicial forum. They suggest that because Plaintiff's arbitration agreement provided that it applied to all "disputes between Associate and Broker" occurring "prior to [the] termination" of the agreement, it clearly applied to discrimination claims arising out of

Plaintiff's employment. Consequently, Defendants contend, the arbitration provision is valid, even though it contained no specific language about statutory remedies or Plaintiff's right to sue.

While Defendants' argument has merit, particularly in light of the national policy favoring arbitration, under New Jersey law, an arbitration agreement does not waive statutory rights unless it contains:

> the use of language reflecting that the employee, in fact, knows that other options such as federal and state administrative remedies and judicial remedies exist; that the employee also knows by signing the contract, those remedies are forever precluded; and that, regardless of the nature of the employee's complaint, he or she knows that it can only be resolved by arbitration.

Garfinkel, 773 A.2d at 672 (holding that an arbitration provision providing, "'any controversy or claim' that arises from the agreement or its breach shall be settled by arbitration," was too ambiguous to waive the plaintiff's right to sue in court for his sex discrimination claims).

This standard requires rejection of arbitration provisions, such as the one presently at issue, that fail to state explicitly that the party is waiving his "time-honored right to sue."[1] Id. (quoting Marchak v. Claridge Commons,

---

[1] The New Jersey Supreme Court's requirement of specific language to waive the right to sue appears to be in tension with the FAA's policy that "a state cannot subject an
(continued...)

Inc.,633 A.2d 531 (N.J. 1993)). In Grasser v. United HealthCare Corp., 778 A.2d 521, 523 (N.J. Super. App. Div. 2001), for example, the New Jersey Superior Court, Appellate Division, rejected a provision very similar to the one presently before the Court.[2] In determining that the provision was ambiguous, the court reasoned that "both this court and the New Jersey Supreme Court have been equally clear in insisting that any such waiver and agreement to arbitrate must be explicit and *must refer specifically* to arbitration of termination disputes and claims of [discrimination]." Id.(emphasis added).

Similarly, in upholding an arbitration provision, the New Jersey Supreme Court in Leodori relied on the fact that the "relevant provision lists numerous federal statutes by name as falling within its purview, in addition to 'any other federal,

---

[1](...continued)
arbitration agreement to more burdensome requirements than those governing the formation of other contracts." Leodori, 814 A.2d at 1104. This tension is also implicated by the fact that, while an arbitration agreement is, by its nature, a waiver of the right to seek a judicial forum, the United States Supreme Court nevertheless determined that doubts should be resolved in favor of arbitration. Cone Memorial Hosp., 460 U.S. at 24-25. In spite of these concerns, however, this Court is bound by New Jersey principles of contract interpretation, including New Jersey courts' determinations of what does and does not constitute ambiguity in a contract.

[2] Specifically, the provision stated, "I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to arbitration under UHC's policy." Id.

state, or local statute, regulation, or common-law doctrine, regarding employment discrimination, conditions of employment, or termination of employment.'" 814 A.2d at 1105; see also Gras v. Associates First Capital Corp., 786 A.2d 886, 895 (N.J. Super App. Div. 2001) (upholding an arbitration agreement because "[m]ost relevant[ly], the agreement addresses disputes based on a federal or state statute."). Without such an explicit mention of judicial remedies or statutory rights, an arbitration provision is too ambiguous to constitute a waiver of these rights under New Jersey law.

Defendants raise Martindale v. Sandvick, Inc., 800 A.2d 872, (N.J. 2002), in support of their argument that such specific language is unnecessary. However, while the Martindale court did uphold the arbitration provision at issue, it relied in part on a clause within the arbitration provision providing, "I agree to waive my right to a jury trial in any action or proceeding related to my employment with Sandvik. I understand that I am waiving my right to a jury trial . . ." Id. at 875. Martindale is thus consistent with other New Jersey cases requiring specific mention of the waiver of statutory remedies and/or a jury trial.

Because the arbitration provision in Plaintiff's employment agreement uses no language addressing statutory remedies or Plaintiff's right to a jury, its application to discrimination claims is ambiguous under New Jersey contract law

9

and does not bar the present suit. Accordingly, Defendants' motion to dismiss or to stay prosecution of the present suit will be denied.

The accompanying Order shall enter today.


Dated:  9-23-05                     s/ Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge